IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JADESTATION HOLDINGS, LLC,<br><br>Defendant. | Civil Action No.<br><br>2:23-cv-00927 |

**PLAINTIFF WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S MOTION TO COMPEL ITEMIZED APPRAISAL AWARD**

Plaintiff, Westchester Surplus Lines Insurance Company ("Westchester"), by and through its undersigned counsel, hereby files this Motion to Compel an Itemized Appraisal Award as sought in Count II of Westchester's Complaint for Declaratory Judgment, and in support therefore states as follows:

**INTRODUCTION**

In this Motion, Westchester requests that the Court order that an itemized and delineated appraisal award be issued by the three-member panel appraising Defendant Jadestation Holdings, LLC's ("Jadestation") insurance claim for property damage. *See* Count II of Westchester's Complaint for Declaratory Judgment ("Complaint"). The purpose of such an award is to ensure that Westchester (and the Court if necessary) can evaluate coverage for Jadestation's alleged loss at such time as the appraisal process is concluded, consistent with the

insurance policy at issue and applicable Florida law.[1] Contested coverage issues are presented by Jadestation's claim. Thus, the only way to ensure that such contested coverage issues are properly identified is for the appraisal panel to produce an itemized and delineated appraisal award.

## BACKGROUND FACTS

1. This insurance coverage dispute arises, in part, out of a demand for appraisal of an insurance claim for damages allegedly caused by Hurricane Ian on September 28, 2022, to two buildings located at 2947 Evans Ave., Fort Myers, FL 33901 ("Location 1") and 2955 Evans Ave., Fort Myers, FL 33901 ("Location 2") (collectively, the "Insured Locations").

2. The Insured Locations are owned by Defendant Jadestation and are insured by Westchester, subject to the terms, conditions, exclusions, and limitations of Policy No. FSF16775125 001 issued to Jadestation Holdings, LLC for the period beginning August 30, 2022 and ending August 30, 2023 (the "Policy").

3. On February 23, 2023, Jadestation reported a loss caused by Hurricane Ian. Specifically, Jadestation claimed that the Insured Locations sustained exterior, interior, and roof damage as a result of the storm.

4. On March 9, 2023, Crawford and Company ("Crawford") inspected the Insured Locations on behalf of Westchester. Crawford observed evidence of

---

[1] Pursuant to Florida's rule of *lex loci contractus,* Florida law governs Defendant Jadestation's insurance claim because the last act necessary for the formation of the Policy occurred in Florida. *See Scott, Blane, & Darren Recovery, LLC v. Auto-Owners Ins. Co.,* 727 F. App'x 625, 631 (11th Cir. 2018) (quoting *State Farm Mutual Auto. Ins. Co. v. Roach,* 945 So. 2d 1160, 1163 (Fla. 2006).

2

long-term interior water damage throughout both Insured Locations and missing shingles in both roofs.

5.   On April 18, 2023, Stephens Engineering Consultants ("Stephens") conducted a second inspection of the Insured Locations to reach a determination as to the cause and origin of the observed damages and issued a report. A true, accurate, and correct copy of the Stephens report is attached hereto as Exhibit "A." The Stephens report states in part:

> Based on the inspection of the subject property, research, and/or review of provided documents, the following conclusions are provided:
>
> Stephens's inspection of the exterior of the buildings revealed various conditions consistent with wind-related damage and/or impact-related damage from wind-borne debris on or about the reported date of loss.
>
> Stephens's inspection of the building roofs revealed widespread torn shingle tabs on all roof slopes consistent with wind- related damage.
>
> Due to the widespread wind-related damage to the shingles, complete replacement of all roof slopes is recommended.
>
> Stephens's investigation of the windows revealed no displaced or missing elements consistent with wind-related damage. The separations at the windows were a historical condition that originated prior to the reported date of loss.
>
> Stephens's findings from the interior inspection of the respective units has been included in the interior damage section.
>
> Various other conditions and/or damage, detailed herein, were attributable to causes other than wind.

6.   Based on these two inspections, on May 31, 2023, Westchester issued a partial declination of coverage for the loss. Among other things, Westchester

advised Jadestation of the following: (1) the Policy's Pre-Existing Damage Exclusion and Faulty Maintenance Exclusion bar coverage for the soffit panel at the front of Location 1; (2) the Policy's Faulty Maintenance Exclusion bars coverage for the tree damage to the left side of Location 1; (3) the Policy's Pre-Existing Damage Exclusion and Wear and Tear Exclusion preclude coverage for the separations in the stucco veneer on the back left corner of Location 1; (4) the Policy's Wear and Tear/Deterioration Exclusions and Faulty Maintenance Exclusion bar coverage for certain damages to the interior of Location 2; and (5) the Policy's Fungus Exclusion bars coverage for the microbial growth in Location 2's bathroom.

7. Westchester issued payment to Jadestation in the amount of $41,401.94 for covered damages to the Insured Locations. This payment was based on the following:

> **Location 1**
> Covered Damages Estimate: $32,516.16 (Actual Cash Value)
> Windstorm/Hail Deductible: $12,500.00
> **Net Claim: $20,016.16**
>
> **Location 2**
> Covered Damages Estimate: $33,885.78 (Actual Cash Value)
> Windstorm/Hail Deductible: $12,500.00
> **Net Claim: $21,385.78**

8. On or about June 22, 2023, Jadestation, through its representative, Omega Claims Public Adjusters ("Omega"), presented Westchester with net repair estimates, inclusive of prior payments, as follows: $68,447.06 for Location 1 and

$74,436.22 for Location 2. Both estimates sought payment for claimed damages to the roof, exterior, and interior of both Insured Locations.

9. Westchester made no additional payments in response to Jadestation's net repair estimates.

10. On July 27, 2023, Jadestation invoked the Policy's appraisal provision and named Lari Piscitelli as its appraiser.

11. On August 16, 2023, Westchester responded to Jadestation's appraisal demand, naming Randy Ison of J.S. Held as its appraiser.

12. Westchester's correspondence sought an agreement from Jadestation that contested coverage issues would not be addressed during the appraisal and that the appraisal panel would issue an itemized appraisal award.

13. On August 18, 2023, Jadestation advised that it would not agree to exclude contested coverage issues from the appraisal process. Jadestation further advised that it would not agree to the issuance of an itemized award.

14. Westchester and Jadestation are at an impasse and have been unable to come to an agreement on the scope of the appraisal and on whether the appraisal panel will issue an itemized award.

**LEGAL ARGUMENT AND CITATION OF AUTHORITY**

**I. THE COVERAGE ISSUES SUPPORT THE USE OF AN ITEMIZED APPRAISAL AWARD.**

**A. Westchester Retains the Right to Consider Coverage Issues When There Is an Appraisal.**

The appraisal provision of the Policy states that "[i]f there is an appraisal, we will still retain our right to deny the claim." *Policy*, p. 10. Thus, the Policy

5

contemplates that coverage issues may need to be considered even when the loss is appraised under the Policy's appraisal provision. *See State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285, 1287 (Fla. 1996) ("[t]he purpose of [this] 'right to deny' sentence is to state, quite simply, that if… the insurer proceeds with the appraisal process, the insurer has not thereby abandoned any coverage defenses which may be available to it).

The Florida Supreme Court has unambiguously stated that "an assessment of the amount of a loss" necessarily includes a determination of "whether or not the requirement for a repair or replacement was caused by a covered peril or a cause not covered." *Id* at 1288. Furthermore, as the Eleventh Circuit has explicitly recognized, an "[a]ppraisal exists for a limited purpose – the determination of the 'amount of the loss'." *Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, 71 F.4th 827, 836 (11th Cir. 2023) (quoting *Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d 1226, 1230 (Fla. Dist. Ct. App. 2013)). An itemized award allows the Court to distinguish between damages unambiguously covered by the Policy and damages for which coverage may be precluded by the Policy's terms, conditions, and exclusions. *See Licea*, 685 So. 2d at 1288 (holding that "where there is a demand for an appraisal under the policy," the insurer may still argue "that there is no coverage under the policy for the loss as a whole or that there has been a violation of the usual policy conditions"); *Liberty Am. Ins. Co. v. Kennedy*, 890 So. 2d 539, 541-42 (Fla. 2d DCA 2005) ("[t]he issue of coverage is not necessarily a matter of all or nothing… the

6

submission of the claim to appraisal does not foreclose [the insurer] from challenging an element of loss as not being covered by the policy").

Moreover, an itemized appraisal preserves Westchester's right to have this Court determine coverage issues, as required under Florida law. While an appraisal resolves issues of actual cash value and the amount of the loss, "all issues other than those contractually assigned to the appraisal panel are reserved for determination in a plenary action." *Positano*, 71 F.4th at 834 (quoting *Mango Hill*, 117 So. 3d at 1230).

### B. During the Appraisal, There Is A Need To Distinguish Between Damages Caused By A Covered vs. Excluded Cause of Loss.

The insuring agreement of the Policy provides, in pertinent part, as follows:

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

Policy, p. 1. The Policy contains exclusions for loss or damage caused by wear and tear, deterioration, cracking; faulty, inadequate, or defective design and/or maintenance; mold, fungus, wet rot, dry rot or bacteria; and neglect of an insured to use all reasonable means to save and preserve the Insured Locations from further damage at and after the time of loss. Policy, Causes of Loss – Special Form, pp. 1-4. Furthermore, the Policy's Pre-Existing Property Damage Exclusion Endorsement "excludes any loss or damage directly or indirectly caused by,

resulting from or contributed to by any pre-existing property damage at the time of loss" Policy, ACE0421 (08/09), p.1.

Based on these Policy provisions, coverage is precluded for damage due to wear and tear, deterioration, cracking; faulty, inadequate, or defective design; and/or maintenance, mold, fungus, wet rot, dry rot or bacteria; and for any pre-existing property damage at the time of loss. The exclusionary provisions contained in the Policy have been deemed unambiguous by Florida courts and, as such, are enforceable according to their plain meaning. *See Divine Motel Grp., LLC v. Rockhill Ins. Co.*, No. 3:14-cv-31-J-34JRK, 2015 WL 4095449, at *8 (M.D. Fla. July 7, 2015); *Florida Windstorm Underwriting v. Gajwani,* 934 So.2d 501 (Fla. 3rd DCA 2005).

**C.   During the Appraisal, It Is Necessary to Identify the Actual Cash Value and Replacement Cost of the Damages for Each Building Separately.**

The Policy contains the following provision concerning replacement cost:

**G. Optional Coverages**
* * *
**(3) Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the in the Valuation Loss Condition of this Coverage Form.

* * *

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

> **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.
>
> * * *

Policy, p. 15.

Westchester is not obligated to pay any insurance proceeds under the "Replacement Cost" coverage provision unless the damage to the Insured Locations has actually been repaired or replaced, and unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

Therefore, based on the foregoing Policy provision, Jadestation must have made actual repairs "as soon as reasonably possible after the loss or damage" in order to recover replacement cost value under the Policy.

## II.  AN ITEMIZED APPRAISAL IS PROPER.

It is undisputed that Jadestation's claim involves a combination of covered and excluded damages. As such, an itemized appraisal award is the only way to ensure the disputed coverage issues are properly identified during the appraisal proceeding for Westchester's, and if necessary, for the Court's, later determination.

Florida courts regularly hold that a line-item appraisal assists with the judicial assessment of later coverage disputes, and thus, such itemization can be both practical and beneficial for the parties and court. *See Baldwin Realty Grp., Inc. v. Scottsdale Ins. Co.*, No. 6:18-cv-785-Orl-41DCI, 2018 WL 4381206, at *6 (M.D. Fla. Sept. 6, 2018); *McPhillips v. Scottsdale Ins. Co.,* No. 2:18-cv-421-FtM-99CM, 2018 WL 3805865, at *3 (M.D. Fla. Aug. 10, 2018); *Fla. Ins. Guar. Ass'n, Inc. v. Olympus Ass'n, Inc.*, 34 So. 3d 791, 796 n.1 (Fla. 4th DCA 2010) (noting that

when an appraiser uses a line-item appraisal form, "a court can readily identify any coverage issues that arise during the course of appraisal and resolve these without having to try and decipher what value the appraiser assigned for a particular type of damage").

Moreover, use of an itemized appraisal award is the only means by which the Court can interpret the insurance policy "as a whole" as required by Florida law. Under Florida law, this Court must give effect to the entire policy, "endeavoring to give every provision its full meaning and operative effect." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007); *see also State Farm Fire & Casualty Co. v. CTC Development Corp.*, 720 So.2d 1072, 1074-75 (Fla.1998) ("principles governing the construction of insurance contracts dictate that when construing an insurance policy to determine coverage the pertinent provisions should be read *in pari materia*").

An itemized and delineated award allows this Court to more easily assess, and therefore streamline, the determination of the coverage issues once the appraisal process is concluded.[2] Use of a detailed line-item appraisal form would allow this Court to readily identify the coverage issues presented by Jadestation's claim, and resolve those issues without having to try to decipher, after the fact, the

---

[2] To the extent this Court finds that it should not compel an itemized appraisal award, Westchester respectfully requests that this Court enter an order, as to Count I of Westchester's Complaint for Declaratory Judgment, requiring that damages for which coverage is contested be excluded from the appraisal panel's consideration.

10

amount of the loss assigned by the appraisers and umpire for any particular type of damage.

Thus, in the circumstances presented here, the appraisal panel determining the value of Jadestation's loss should be required to complete an itemized and delineated appraisal award form. *See Naples II*, No. 2:21-cv-181-SPC-MRM, 2022 WL 714809, *3 (M.D. Fla. Mar. 10, 2022) (finding no plain error in recommendation "that the appraisal panel should issue an award that delineates between the specific coverages offered under the Policy for each unique building"); *Gulfside, Inc. v. Lexington Ins. Co.*, No. 2:22-CV-47-SPC-NPM, 2023 WL 2743148, at *4 (M.D. Fla. Mar. 31, 2023) ("appraisal award must be stated in terms that coincide with the contours of the policy. That means it must present the replacement cost value, actual cash value, ordinance or law, debris removal, and any other benefit figures").

The appraisal panel's itemizations and delineations should be made in order to allow the panel to fulfill their obligations, and to allow this Court to give every provision of the Policy its full meaning and operative effect, as required by Florida law, for the purpose of determining which damages as identified in the appraisal award are covered, and which are not. Thus, in the circumstances presented here, the appraisal panel should be required to complete an itemized and delineated award.

LEGAL\66478907\2

## CONCLUSION

For all the foregoing reasons, this Court should order the appraisal panel to provide an itemized and delineated appraisal award.

**WHEREFORE**, Westchester Surplus Lines Insurance Company respectfully requests that this Court enter an Order requiring the appraisal panel to provide an itemized and delineated appraisal award, and for all further relief the Court deems appropriate.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Middle District of Florida Local Rule 3.1(g), I hereby certify as counsel for the movant that I have conferred with Defendant. Defendant does not agree to the relief sought by Westchester in this Motion.

Respectfully submitted this 23rd day of October, 2023.

> */s/ Tiffany Bustamante*
> Tiffany Bustamante
> Florida Bar No.: 117643
> **Cozen O'Connor**
> Southeast Financial Center, Ste. 3000
> 200 South Biscayne Blvd.
> Miami, Florida 33131
> Telephone:  (305) 358-6031
> Facsimile:  (305) 704-5955
> Email:  tbustamante@cozen.com
>
> and
>
> Alycen A. Moss
> (*Pro Hac Vice application to be submitted*)
> Luciana Aquino
> (*Pro Hac Vice application to be submitted*)

**Cozen O'Connor**
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone:  (404) 572-2052
Facsimile:   (877) 728-1396
E-mail:       amoss@cozen.com
                     laquino@cozen.com

*Attorneys for Defendant Westchester Surplus Lines Insurance Company*

13

LEGAL\66478907\2